## GOVERNOR, USE, &c., *vs.* PEARCE.

[DEBT ON SHERIFF'S BOND.]

1. *Liability of sheriff and sureties for negligent treatment of runaway slave.*—A recovery cannot be had against a sheriff and his sureties, in an action on his official bond, for the jailor's negligent treatment of a slave, who was apprehended by a justice of the peace, and immediately committed to jail by him as a runaway : the commitment, under such circumstances, is void, because not in compliance with the requisitions of the statute, (Clay's Digest, 541, § 14 ;) and the fact that the slave was received by the sheriff and jailor as a runaway, does not estop the sureties from setting up the invalidity of the commitment.

APPEAL from the Circuit Court of Tallapoosa.
Tried before the Hon. E. W. PETTUS.

THIS action was brought in the name of Henry W. Collier, for the use of Henry A. Temple, against Stephen A. Pearce, sheriff of Coosa county, and the sureties on his

official bond; and sought a recovery for injuries caused
by the jailor's negligence, in the treatment of a slave
belonging to said Temple, while in jail as a runaway.   On
the trial, as the bill of exceptions states, "the plaintiff
introduced evidence, tending to show that said slave was
his property, and was apprehended by one Thomas C.
Dunlap, an acting justice of the peace for said county, on
the 16th January, 1853, between the hours of 9 and 10
o'clock, P. M., in the town of Rockford, and immediately
taken by him to the county jail in said town, and deliv-
ered to the jailor, in the presence of the sheriff, as a runa-
way; that said Dunlap was known to the jailor as an
acting justice of the peace, and declared, when he deliv-
ered said slave, that he delivered him as a justice of the
peace, and upon his decision, as such justice, that the
slave was a runaway, and for the purpose of having him
confined as such; that the sheriff and jailor received said
slave as a runaway, and kept him as such in one of the
cells of the jail until the Tuesday morning following,
when he was delivered to Temple's overseer; that the
weather was very cold while said slave was so confined in
jail; that the slave was only furnished with one blanket
and part of another, both much worn, very thin, and of
an inferior quality, and, in consequence thereof, was badly
frost-bitten in his feet, and thereby much injured, and his
value lessened by several hundred dollars.   The evidence
was conclusive, that said justice made no order in writing
for the commitment of the slave.   On all the other points
in the case, except as to the defendants' bond, the evidence
was conflicting."

"On this state of facts, the court charged the jury, that
if they believed from the evidence that said slave was
arrested by a justice of the peace, on Sunday, the 16th
January, 1853, as a runaway, and was carried by him to
the jail of said county, and there delivered to the jailor,
in the presence of the sheriff, as a runaway; and that the
jailor, in the presence of the sheriff, received said slave as
a runaway, and confined him as such in the jail; and that
the slave was not in fact a runaway; and that said justice
of the peace made no order in writing for the commitment

of said slave,—then the plaintiff cannot recover in this action, for any damages sustained by said slave by any neglect or failure to furnish him with blankets. The plaintiff excepted to this charge, and asked the court to instruct the jury, that if they believed from the evidence that said slave was committed to the jail by the justice himself, and delivered by him as a runaway, in the presence of the sheriff, who received the slave as a runaway, and kept him as such until the day when he was delivered to plaintiff's overseer,—then the sheriff was estopped from saying that the slave was not a runaway. The court refused to give this charge, and the plaintiff excepted."

The charge given, and the refusal to charge as requested, are now assigned as error.

L. E. PARSONS, JOHN WHITE, and R. M. CHERRY, for the appellants.

N. S. GRAHAM, and JAS. E. BELSER, *contra*.

WALKER, J.—The charge given, and the refusal to charge, present the following question: Are a sheriff and his sureties liable, in a suit upon his official bond, for an injury to a slave, while in jail, caused by the jailor's negligence, which slave was apprehended by a justice of the peace, and by him carried directly to the jail, and delivered to the sheriff and jailor as a "runaway."

There was no breach of the sheriff's bond, unless the custody and keeping of the negro was an official duty. Such a duty could not have devolved upon the sheriff, unless the slave was committed to jail as a "runaway," by competent authority. It could not be either the right or duty of the sheriff, as an officer, to receive or keep the slave in jail, unless he had been committed, as provided in the statute.

The law, in reference to the apprehension of fugitive slaves, is as follows: "All runaway slaves may be lawfully apprehended by any person, *and carried before the next justice of the peace*, who shall either commit them to the county jail, or send them to the owner, if known; who shall pay

for every slave so taken up the sum of six dollars to the person so apprehending him or her, and also all reasonable costs and charges."—Clay's Digest, 541, § 14.   Three distinct acts unite in making the whole proceeding under this statute, which terminates in the imprisonment of the slave: the capture and carrying of the slave before the justice of the peace; the ordering the imprisonment of the slave, and the carrying of the slave to the prison.   To make out of the facts here presented a compliance with the statute, we must hold, that the justice of the peace, having apprehended the slave, by a mental process deemed the slave brought before him as a justice of the peace, and then, acting mentally upon facts known to himself as a justice of the peace, adjudged that the slave be committed; and proceeded at once to execute the judgment by carrying the slave to the jail.

We regard the judgment of commitment, if one can be said to have been rendered, as void for want of jurisdiction.   The statute contemplates that the captor of the slave shall carry him before the next justice of the peace; and that thereupon the justice shall take jurisdiction, and commit or send the slave to his owner.   No importance is attached to the phrase "next" justice of the peace, save as it conduces to show that the slave is to be carried before some other person than the captor.   The jurisdictional fact is the carrying of the slave before a justice of the peace as a runaway.   That fact did not exist.   It is in its nature a distinct fact upon which the authority of the justice depends, and can not be supplied by the intendment of the justice, that he, having apprehended the slave, has carried him before himself as a judicial officer.   The power to commit the slave is special and statutory, and can not be exercised in the absence of the preliminary jurisdictional fact.   It is true that, when a judicial tribunal is charged with the ascertainment of a jurisdictional fact, and has decided that fact to exist, its decision is conclusive.   But in the case put by the charge there was an entire absence of the jurisdictional fact, and no evidence that the existence of that fact was ever passed upon by the justice.

We do not inquire how far the doctrine of estoppel might affect the sheriff, if he were sued alone; but it is clear, that there is no estoppel operating in this suit upon the official bond of the sheriff. Upon that bond no recovery can be had save for official misconduct. "The sureties of a sheriff are not liable for a malfeasance of the sheriff, unless the act complained of includes an omission to perform some duty imposed by law."—Governor v. Hancock & Harris, 2 Ala. 728. That the sheriff represented an act to be official in its character, or that he has assumed to act where he had no authority *virtute officii*, can never estop the sureties from alleging the truth; because they are only bound by his representations and his conduct, when discharging a duty imposed by law. Dean v. Governor, 13 Ala. 526; Fitzpatrick v. Br. Bank, 14 Ala. 533; Farmers' Bank of Chattahoochie v. Reid, 3 Ala. 299; Dumas v. Patterson, 9 Ala. 484.

We are led by the views above expressed to the conclusion, that the receiving and retention of the slave in jail was not an official act of the sheriff—not the discharge of a duty imposed by the law; and, consequently, no suit can be maintained upon the official bond on account of an injury caused by the careless and negligent manner in which the jailor kept the slave.

The judgment of the circuit court is affirmed.